IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:23CR215 |
| v. | |
| JADEN D. REIMAN, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Jaden Reiman's ("Reiman") objections (Filing No. 349) to the magistrate judge's[1] Findings and Recommendation (Filing No. 348) recommending that his motion to suppress (Filing No. 231) be denied. For the reasons that follow, his objections are overruled.

I.   **BACKGROUND**

In this case, Reiman is accused of conspiring to distribute 500 grams or more of a mixture containing methamphetamine and possessing with intent to distribute 50 grams or more of such a mixture (Filing No. 61). *See* 21 U.S.C. §§ 841(a)(1), (b)(1), 846. On October 14, 2024, Reiman moved to suppress evidence and statements (Filing No. 231) on the grounds that his Fourth and Fifth Amendment rights were violated by a traffic stop, the ensuing dog sniff of his vehicle, and later post-*Miranda* questioning. *See* U.S. Const. amend. IV, V; *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The objections before the Court concern the challenged dog sniff.

In his Findings and Recommendation, the magistrate judge thoroughly summarized the facts surrounding those incidents. Those facts are virtually unchallenged. Law enforcement's investigation of Reiman on August 23, 2023, arose from the surveillance of

---

[1]The Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

Jonathan Ovalle Solis ("Solis"), a reputed methamphetamine dealer who had twice before participated in controlled buys with undercover officers. Omaha Police Department Officer Brian Gerrity ("Officer Gerrity") observed Solis leave his home and drive to a Walgreens parking lot at 24th Street and L Street in Omaha, Nebraska.

There, Solis met Reiman, who approached the Walgreens parking lot just after Solis's arrival, riding in the passenger seat of a Buick Enclave (the "Buick"). According to his testimony, Officer Gerrity saw Reiman exit the Buick with a black drawstring bag, get into Solis's car, and sit there for "less than a minute or two" before returning to his car. Reiman and Solis's cars then left the parking lot at the same time. Neither man ever entered the Walgreens. Officer Gerrity testified that, although he could not see any "hand-to-hands" inside the car, he was "certain" he observed a drug deal between Solis and Reiman based on his years of experience in narcotic investigations and observations of such meetings.

Throughout the surveillance, Officer Gerrity kept in contact with several other participating law-enforcement officers. One of those was Douglas County Sheriff's Office Investigator Daniel Eads ("Investigator Eads"). Investigator Eads also observed Reiman's meeting with Solis and believed a drug transaction occurred. Along with other officers, Investigator Eads began to follow Reiman's Buick in an unmarked vehicle when it left the Walgreens. Sergeant Jarrod Wineinger ("Sergeant Wineinger") of the Douglas County Sheriff's Office was also called to assist with the investigation along with his drug dog, Riggs.

The officers followed Reiman westbound on Interstate 80 during rush-hour traffic. Investigator Eads testified that, near 108th Street, he observed the Buick "following too close to a semi" and having to repeatedly "brake so that they could avoid a collision." He attempted to initiate a traffic stop of the Buick for following too closely and activated his emergency lights, but the Buick continued on. Investigator Eads honked his horn. Sergeant Wineinger, also driving in an unmarked vehicle, pulled up next to Investigator Eads,

activated his emergency lights, sirens, and air horns. Although Sergeant Wineinger gestured for the female driver of the Buick to pull over when he saw her looking in the rearview mirror, she continued driving. Investigator Eads testified the time it took the Buick to pull over caused the officers to be concerned that Reiman or other occupants could be hiding or destroying evidence, especially in light of the officers' earlier observations.

After failing to pull over for one-and-a-half to two miles, the Buick finally stopped on the side of the interstate. Investigator Eads approached the passenger's side of the car and Sergeant Wineinger approached the driver's side. The driver was identified as Reiman's wife, Jessica Reiman ("Jessica"). The only other passenger was their four year-old child, who was sitting in the backseat. In response to Sergeant Wineinger's questions, Jessica stated she did not pull over sooner because she had "never seen lights like" theirs before. Investigator Eads informed Reiman and Jessica that the Buick was stopped for following the semi too closely.

Investigator Eads and Sergeant Wineinger separately asked Jessica and Reiman to step outside of the Buick and sit in their cars. The officers testified that this is generally done during an interstate traffic stop for safety purposes and because it is difficult to hear on the side of the interstate. Jessica eventually complied and got out of the Buick, at which time Reiman said to her, "Don't say fuckin' anything." Reiman refused to leave the Buick.

Investigator Eads spoke to Jessica in Sergeant Wineinger's vehicle. After some conversation about the traffic violation, Investigator Eads asked Jessica whether there was anything illegal in the Buick. Jessica denied having anything illegal. Investigator Eads asked Jessica for consent to search the Buick, but she denied. He then asked Sergeant Wineinger to deploy Riggs to sniff the car.

Investigator Eads informed Reiman and Jessica that they were going to deploy Riggs around the Buick. He required Reiman to exit the Buick and informed him he was being detained. Reiman originally left the passenger's-side door open, which Sergeant

3

Wineinger closed before deploying Riggs to ensure he wouldn't jump into the vehicle. The driver's-side window remained rolled down throughout the traffic stop.

Sergeant Wineinger brought Riggs to the Buick for his first pass around the car near the height of the dog's head. Riggs was leashed with about three or four feet of give. Sergeant Wineinger testified that Riggs started "going nasal" when he went from the front of the driver's-side door to the back of the door on the first pass. As Sergeant Wineinger testified, going "nasal" is one of Riggs's alerting behaviors in which he "goes from open-mouth sniffing to completely closed mouth." Around that time, Investigator Eads shouted out something, which took Sergeant Wineinger's attention away from Riggs. Still, Sergeant Wineinger reports that he "started to see an alert" but that Riggs then "continued past that" point.

After the first pass, Sergeant Wineinger directed Riggs "high and low" by raising and lowering his hand. He testified that he wanted Riggs to go higher "into the window seams" as odors can travel easier there than through the door seams. Riggs sniffed higher around the Buick and ultimately went nasal when he was up near the driver's-side window. During that pass, Riggs's nose went inside the rolled-down window before he came down and sniffed the door seam more. After moving past the window, Sergeant Wineinger testified, Riggs gave "a little radar" by snapping his head and returning to the window.

Twice more, Riggs put his snout into the open window, moved away, and went back into the window opening. Riggs gave another "head snap," which Sergeant Wineinger describes as an alerting behavior in which Riggs "wants to break away from [his] movement and go back to a location without any prompting." After that, Sergeant Wineinger reported Riggs made a final indication.

Sergeant Wineinger and Investigator Eads then searched the Buick. Inside, they found a baggie with white residue and a water bottle that later tested positive for

methamphetamine. Reiman stated he wanted to speak to law enforcement and was transported to the Douglas County Sheriff's Office for an interview.

On October 17, 2023, a grand jury indicted (Filing No. 1) Reiman on one count of conspiring to distribute 500 grams or more of a mixture or substance containing methamphetamine and one count of possessing with intent to distribute 50 grams or more of such a mixture. *See* 21 U.S.C. §§ 841(a)(1), (b)(1), 846. Reiman filed the present Motion to Suppress about a year later. He sought to suppress of evidence and statements on a number of grounds, arguing: (1) "[t]he traffic stop was not supported by probable cause"; (2) his continued detention was unsupported by further articulable suspicion; (3) Riggs's intrusion into the plane of the car window constituted a search unsupported by probable cause; and (4) his inculpatory statements during the interview were made involuntarily. *See Wong Sun v. United States*, 371 U.S. 471, 484-87 (1963). The government opposed (Filing No. 261) Reiman's arguments for suppression.

Reiman's motion was referred to the magistrate judge, who held an evidentiary hearing on January 14, 2025. *See* 28 U.S.C. § 636(b)(1)(B) (allowing a district judge to "designate a magistrate judge to conduct hearings . . . and to submit" proposed findings and recommendations for the disposition of a motion to suppress evidence); *accord* Fed. R. Crim. P. 59(b)(1). On Reiman's request, the magistrate judge permitted the parties to file supplemental briefing (Filing Nos. 313, 328) after the hearing.

The magistrate judge subsequently recommended that Reiman's motion be denied. The magistrate judge concluded the traffic stop was justified by both Investigator Eads's credible testimony that he believed the Buick committed a traffic violation as well as the officers' reasonable suspicion that Reiman was involved in a drug transaction. *See United States v. Hoeft*, 128 F.4th 917, 920 (8th Cir. 2025) (explaining "a brief investigatory stop is reasonable if supported by 'reasonable, articulable suspicion that a person is committing or is about to commit a crime'" (quoting *United States v. Stokes*, 62 F.4th 1104, 1107 (8th Cir. 2023))); *United States v. Rutledge*, 61 F.4th 597, 600-01 (8th Cir. 2023) ("A police

5

officer may stop a vehicle if he has an objectively reasonable basis to believe that the driver has committed a traffic violation.").

The legality of the dog sniff presented a tougher question. The magistrate judge noted, as did the parties, the uncertainty surrounding the relevant precedent. *Compare United States v. Lyons*, 957 F.2d 615, 617 (8th Cir. 1992) (stating a drug dog's intrusion into a defendant's property "does not constitute a 'search'" if it is a result of "the dog's instinctive actions" not "misconduct by the police" (quoting *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989))), *with United States v. Pulido-Ayala*, 892 F.3d 315, 319 (8th Cir. 2018) (doubting whether *Lyons*'s emphasis on an officer's intent "endure[d]" following the Supreme Court's guidance that "the subjective intent of police officers is almost always irrelevant" to whether a Fourth Amendment violation occurred). He agreed with the logic of other district judges in this circuit that *Lyons* no longer controls whether a drug dog's physical intrusion into an individual's property constitutes a search. *See United States v. Buescher*, 691 F. Supp. 3d 924, 930-37 (N.D. Iowa 2023) (discussing *United States v. Jones*, 565 U.S. 400, 405-07 (2012), and *Florida v. Jardines*, 569 U.S. 1, 5 (2013)); *United States v. Handley*, No. , 2024 WL 1536750 at *6-*7 (N.D. Iowa Apr. 9, 2024). With that, he concluded "Riggs's repeated intrusion of his snout into the Buick's open window, regardless of whether it was an instinctive action done without direction from [Sergeant] Wineinger, amounted to a warrantless physical trespass into the interior of the defendant's car for the purpose of gathering information."

Still, the magistrate judge found the search was lawful because the officers had probable cause to search the Buick before Riggs's snout entered the window. *See United States v. Mims*, 122 F.4th 1021, 1032 (8th Cir. 2024) (stating that "[u]nder the automobile exception" to the Fourth Amendment's warrant requirement, "law enforcement must have probable cause for the search" of a vehicle); *Pulido-Ayala*, 892 F.3d at (explaining "that if police had probable cause to search the car before the dog entered the interior, then any search effected by the entry was permissible"). In his view, that probable-cause

6

determination reasonably consisted of (1) Sergeant Wineinger's belief that Riggs alerted before going into the window, (2) Officer Gerrity's and Investigator Eads's respective beliefs that they witnessed a drug transaction between Reiman and Solis, (3) the Buick's failure to pull over, (4) and Reiman's orders to Jessica not to "say fuckin' anything." For those reasons, the magistrate judge concluded "[t]he totality of the[] circumstances, combined with Riggs's alert 'would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime'" (quoting *Pulido-Ayala*, 892 F.3d at 318-19). He found suppression was not warranted on those Fourth Amendment grounds, nor Reiman's Fifth Amendment argument.

On May 19, 2025, Reiman objected to the magistrate judge's Findings and Recommendation. *See* Fed. R. Crim. P. 59(b)(2); NECrimR 59.2(a). His Statement of Objections lodges both factual and legal objections. First, Reiman argues the evidence does not support a finding that Riggs alerted on the first pass around the Buick before intruding into the car's window opening. Second, he asserts the magistrate judge erred in concluding that (1) Riggs's behavior of "going nasal" at that time added to the officers' suspicion of criminal activity and (2) the officers had probable cause to search the Buick before Riggs's intrusion. The government did not respond to those arguments.

## II. DISCUSSION

In the context of a motion to suppress, "[a] district court must make a de novo determination of those portions of a magistrate's report and recommendation to which objections are made." *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (citing 28 U.S.C. § 636(b)(1)); *see also* Fed. R. Crim. P. 59(b)(3). "When de novo review is compelled, no form of appellate deference is acceptable." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991). The Court, therefore, gives "fresh consideration to those issues to which specific objections" have been made. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980) (internal quotation omitted). In doing so, the Court usually won't hold a "de novo hearing," *id.*, but must conduct a meaningful review of the record and the

magistrate judge's findings and recommendation, *see United States v. Azure*, 539 F.3d 904, 909-10 (8th Cir. 2008).

That review bears no more fruit for Reiman than before. He starts by challenging the magistrate judge's factual finding that Riggs's response on the first pass around the Buick constituted an "alert without final indication." Reiman contends that conclusion is unsupported by the body-camera footage in his case and the testimony at the hearing.

At the hearing, Sergeant Wineinger testified that Riggs's alerting behaviors include "when he goes from open-mouth sniffing to completely closed mouth, nasal." He further stated that, on their first pass around the Buick, he "started to see an alert," but then Riggs "continued past" and moved around the vehicle. As he describes it, when Riggs first came to the door seam, "he stopped and started going nasal on that seam [] for an instant" until Investigator Eads yelled out something that took his attention away from Riggs.

Reiman is correct that the body-camera footage doesn't clearly display this part of the investigation. The angle from Sergeant Wineinger's body camera doesn't allow for a clear picture of Riggs's behavior during the first, head-level pass around the vehicle. Investigator Eads's footage provides even less given that he was watching traffic during that time and mostly had his back to Sergeant Wineinger and Riggs. And while nasal sounds are not discernable from the footage, it is farfetched to expect such sounds would be captured on the recording since the sniff was conducted on the side of the interstate during rush-hour traffic.

But the lack of video footage of Riggs's sniffing behavior does not necessarily mean the magistrate judge's finding lacked support. On the Court's de novo review, it appears reasonable to credit Sergeant Wineinger's testimony that he witnessed Riggs finding a scent and displaying alerting behavior on his first pass around the Buick—even if for a brief period of time. *See Taylor v. Farrier*, 910 F.2d 518, 521 (8th Cir. 1990) (explaining the Court must make a de novo review of a magistrate judge's credibility finding "once a party

8

makes a proper objection"). Sergeant Wineinger testified that he has been training with Riggs for two years and has a sound basis for predicting and analyzing Riggs's behavior under various circumstances. Further, he had a sufficient opportunity to witness Riggs "going nasal" because his attention was only very briefly diverted to Investigator Eads. There is nothing in the record that directly contradicts his testimony that Riggs appeared to begin alerting before the later, higher passes around the Buick.

Regardless, that finding was only one piece of the magistrate judge's probable-cause analysis. An officer has probable cause to search a vehicle "when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found." *United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023); *see also Florida v. Harris*, 568 U.S. 237, 243-44 (2013). A reliable drug dog's "alert establishes probable cause for a search." *United States v. Rose*, 124 F.4th 1101, 1106 (8th Cir. 2025) (quoting *United States v. Collier*, 116 F.4th 756, 761 (8th Cir. 2024)). The alert itself, not the manner of the alert, is what matters. *See id.* at 1107 (noting the excitability of the dog and its short leash did not "overcome the presumption of probable cause that attaches when a certified and trained dog alerts").

Despite that, the magistrate judge did not treat Riggs's early alerting behavior as dispositive by itself but weighed it in conjunction with the totality of the other suspect circumstances. *See Collier*, 116 F.4th at 761 n.3 (8th Cir. 2024) (explaining that even an alert from a relatively unreliable dog may be considered as part of the "totality of the circumstances" establishing probable cause (internal quotation omitted)). Thus, even assuming Reiman is correct in doubting that Riggs alerted, the magistrate judge adequately weighed the circumstances of his sniff in coming to his legal conclusions.

Turning to those challenged conclusions, the Court further agrees with the magistrate judge. By the time Riggs's snout entered the plane of the car window, the totality of the circumstances established probable cause to search the Buick. Combined, the officers' knowledge that (1) Reiman participated in a suspected drug transaction with a

9

known dealer, (2) Jessica—just moments later—failed to pull over for over a mile despite numerous signals to do so, (3) Reiman directed Jessica not to give the officers any information, and (4) Riggs began presenting alerting behaviors, sufficed to make a reasonable officer believe there was a fair probability that drugs would be found in the Buick. *See United States v. Dabney*, 42 F.4th 984, 988 (8th Cir. 2022) (finding it was reasonable for an officer to believe the defendant was hiding contraband or possessed a weapon because he "was slow to pull over"); *United States v. Brown*, 923 F.2d 109, 110 (8th Cir. 1991) (concluding officers had probable cause to search a car after observing the defendant, along with a known drug dealer, participate in an apparent drug deal while in the car). Having carefully completed the requisite de novo review, the Court concludes the suppression of evidence is not warranted by Riggs's intrusion because "the challenged search inevitably would have occurred based on independent probable cause." *Pulido-Ayala*, 892 F.3d at 319.

For those reasons,

IT IS ORDERED:

1. Defendant Jaden Reiman's objections (Filing No. 349) to the magistrate judge's Findings and Recommendation (Filing No. 348) are overruled.
2. The magistrate judge's Findings and Recommendation is accepted.
3. Reiman's Motion to Suppress (Filing No. 231) is denied.

Dated this 23rd day of June 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge